## No. 9129.

H. McKnight, Administrator, vs. W. S. Calhoun and Ada Lane.

Where one is administrator of a succession which has a claim against him individually, or as unconditional heir of another decedent, prescription is suspended during the continuance of the administration.

Prescription is likewise suspended as to such claim against one who is his co-heir, or who is bound with him in the same manner and for the same sum. A suit by him, as administrator of one succession, against his co-heir in another succession, when their liability *quoad* this claim is the same, would be virtually a suit against himself.

A claim against one for rents collected and received by the connivance or consent of the administrator to whom they belonged, is likened to the responsibility of a *negotiorum gestor* rather than a wrong-doer, and the action to recover them is not *ex delicto.* The prescription of one year is not applicable thereto but that of ten years.

The doctrine: "*contra non valentem agere non currit prescriptio,*' is not inconsistent with the laws of Louisiana, or repugnant to our system of jurisprudence, and will be enforced in proper cases.

Opinions and *dicta* to the contrary must be considered as overruled. The decision in the Succession of Farmer, 32 A. 1037, affirmed.

APPEAL from the Twelfth District Court, Parish of Grant. *Barbin*, J.

*R. P. Hunter,* and *R. J. Bowman* for Plaintiff and Appellant.

*Jos. P. Hornor* and *F. W. Baker* for Defendants and Appellees.

The opinion of the Court was delivered by

MANNING, J.   Meredith and Mary S. Calhoun were husband and wife. Their two children William and Ada are the defendants.   Meredith Calhoun died 1869, and his son became administrator of his estate and continued so until 1882, during which year he was destituted and the plaintiff McKnight was appointed.   Mrs. Calhoun had died in 1871, and the children, both majors, had accepted her succession unconditionally and were put in possession thereof.

In January 1883 McKnight, as administrator of Meredith Calhoun, brought this suit to recover the amount of certain debts which it is alleged the mother of the defendants owed at the time of marriage, and which had been paid by Meredith her husband during the community; for improvements made on her lands by him during the same time; and rents of his lands alleged to have been collected by the defendant Mrs. Lane from 1873 to 1881.

Prescription was pleaded and sustained, and the plaintiff appealed.

If Mrs. Calhoun was thus indebted to her husband's succession, the obligation was personal and subject to the prescription of ten years. The right of action accrued at the death of her husband in 1869, but prescription was suspended as long as William Calhoun was administrator of the creditor succession.   No one could sue for the recovery of the claim but the administrator of that succession.   He might have sued in the brief interval between 1869 and 1871, but when his mother died he became *eo instanti* one of her heirs, and by his unconditional acceptance of her succession stood in her place.   Thereafter he must have sued himself if suit were instituted.   As administrator of his father he would have sued himself individually—his individual liability accruing by virtue of his heirship of his mother.

The law neither authorizes nor countenances a proceeding so anomalous.   Prescription having been thus suspended during the continuance of his administration, the suit was instituted almost immediately after its termination.

If prescription could not run in favor of William Calhoun for the above reason, neither can it run in favor of his sister.   If he had, as

administrator of his father, sued his sister who is with him co-heir of his mother, for this alleged indebtedness, his allegations would be tantamount to a confession of judgment against himself. Because if his sister as his co-heir owes as he must have alleged her to owe, then he owed also in the same way and for the same reason and for the same sum. Every averment that he must have made to set out a cause of action against her would tell equally against himself, and the language he would have used to charge her indebtedness would charge his own indebtedness also. If then he cannot be required as administrator to sue himself, neither can he be required to sue his sister on a liability that he shares with her, and if the one cause suspends prescription so does the other.

The creditors could not have compelled the administrator to sue. His exception to a proceeding by mandamus would have been that if his sister was liable so was he, and that he could not by judicial process be forced into the position of plaintiff and defendant in the same suit at the same time.

Besides, this is not a claim that could have come to the knowledge of creditors. It was not likely to be an inventoried asset of the succession, and could not be in the circumstances of this case. It was not a debt that, like a note for instance, was itself evidence of its existence. It is a claim alleged to arise out of the acts of parties that created a legal liability, the existence of which could be known only to those who had access to the private papers of the deceased, like the administrator, or who knew from other sources what was the history of the property.

But if the creditors had the means of knowing the existence of this debt, the administrator would have answered the compulsory proceeding against him by denying that any obligation of the kind set out by the creditors had ever rested upon his mother, or upon his sister as one of the heirs, and this issue would have involved and necessitated the trial of the whole case in the mandamus proceeding. His personal interest to defeat the suit would conflict throughout with his duty as plaintiff, for it is quite impossible to have separated his own interest from his sister's, and though she would have been the only nominal defendant, his interests would be so inextricably bound up with hers that he would be a real defendant as much as she was. So that we get back at last to the substantial reason why he could not be compelled to sue his sister, *i. e.* he would virtually be suing himself.

If prescription was not suspended under those circumstances, the creditors would be remediless and must stand conscious but silent wit-

nesses of that lapse of time which was gradually taking from them their redress without the power to arrest its progress.

The claim against Mrs. Lane for rents of Meredith Calhoun's lands received by her without any alleged opposition from his administrator cannot be regarded as an action *ex delicto*. She may reasonably be presumed to have received them under some color of right, and her position would be more likened to à *negotiorum gestor* than to a wrong-doer. The prescription of one year is not therefore applicable thereto, but that of ten years, which had not expired.

It is therefore ordered and decreed that the judgment of the lower court is avoided and reversed, the plea of prescription is overruled, and the cause is remanded to be proceeded with according to law, the defendants and appellees paying costs of appeal.

### DISSENTING OPINION.

TODD, J.   I concur in the opinion just read in every respect, save in that part of it overruling the plea of prescription interposed by Mrs. Lane to the demand against her as heir of her mother, Mary S. Calhoun, and think that her plea, to this extent, should have been sustained.

More than ten years had elapsed from the death of Meredith Calhoun and the opening of his succession, to which the debt was alleged to be due, and also, more than ten years from the death of Mrs. Calhoun, whose succession was charged with owing the debt, and I cannot see that prescription as to Mrs. Lane, co-heir of the latter succession, was suspended from any cause recognized by law.

There was not, in my opinion, at any time during this prescriptible term any legal obstacle in the way of a suit against her for her share or portion of the alleged debt.

The succession of Meredith Calhoun was regularly opened, an administrator appointed to it, whose right and duty it was as its legal representative to prosecute all claims in favor of it, and who could have been compelled to do so, if necessary, by creditors and other parties in interest.

The mere fact that the administrator might have felt a reluctance to sue on this claim for reasons and apprehensions personal to himself, should not and did not, in my opinion, have the slightest bearing on the rights of Mrs. Lane, with respect to the prescription of this debt. It was a matter of no concern to her, brought about by no fault of hers and by which she could not be affected.

I, therefore, dissent from this part of the decree and the reasons adduced in support of it.

Fenner, J. concurs in this opinion.

---

### APPLICATION FOR REHEARING.

Poché, J. This is a suit by the administrator of the succession of Meredith Calhoun on an alleged indebtedness due by the succession of his wife, Mary S. Calhoun, and it was brought against the defendants, as her sole heirs, who had accepted her succession.

In overruling the plea of prescription, we held that prescription had been suspended *quoad* W. S. Calhoun during the time that he was the administrator of his father's succession, for the reason that being personally a debtor, by his right of inheritance from his mother, he could not sue himself and that, for the reason that every allegation and proof of indebtedness against his co-heir, who was alike responsible, would affect his interests, prescription had likewise been suspended in her case; a suit against her, on such cause of action, being practically a suit against himself.

Her counsel charge, with great confidence, that our ruling involves a discovery of a means of suspending prescription hitherto unknown to our laws.

But, being forcibly reminded, by their knowledge of jurisprudence, of the doctrine of "*contra non valentem*," etc., which had been practically recognized in the early stages of our jurisprudence, they hastily retreat on the position that the doctrine is inconsistent with the spirit of our legislation, and they intrench themselves within the protection of the decision in the case of Smith vs. Howard, 21 A. 67, in which the Court, as then composed, laid down the opinion that the doctrine had no application in our system of jurisprudence, which admits of no other mode of suspending prescription beyond the means enumerated in the Civil Code.

It is evident that counsel have not yet considered the decision in the case of the Succession of Farmer, 32 A. 1037, which unreservedly recognizes the doctrine and has thus restored jurisprudence to the former position occupied by this Court.

We must adhere to the conclusion that the doctrine finds its application in the case now before us.

A second examination of the question as to the nature of the demand against Mrs. Lane, for an account of rents collected and appropriated

by her, has served to confirm our conclusion that the action is not *ex-delicto*. We are clear in our conviction that when she collected those rents, Mrs. Lane conscientiously believed that she had a legal right thereto. We refuse to entertain the charge implied in the argument of her counsel, that she deliberately, wilfully and wrongfully appropriated money to which she knowingly had no claim or right.

Rehearing refused.

Justices Todd and Fenner adhere to their dissenting opinion.