FOURNET, Justice.
 

 The relator, Joseph De Lucca, having been ordered by judgment of the Civil District Court for the Parish of Orleans (in a contempt proceeding for the alleged violation of a judgment enjoining him from erecting a commercial building or conducting a business establishment on property owned by him in the Fairmont Park Subdivision in the Gentilly section of New Orleans) to remove a certain sign or billboard from the said property within 30 days or, in default thereof, “be guilty of contempt of * * * Court and sentenced to forty-eight (48) hours in the Parish Prison for the Parish of Orleans,” applied for and was granted a writ of certiorari directed to the trial judge ordering him to transmit the entire record in the matter to this court to the end that the validity thereof might be ascertained, all proceedings, in the meantime and until our final determination in the matter, being stayed and suspended by our order.
 

 It appears that the relator and the five respondents in this case, Dr. Emmanuel F. Salerno, D. Thomas Salsiccia, Gustave J. Cucullu, Philip A. Gaudet, and Herman Frank, are owners of property in the Fairmont Park Subdivision, all of which is encumbered with the following restrictions:
 

 
 *664
 
 “No building or any part thereof shall be erected in Block A, B, C and D, facing Fairmont Drive or Gentilly Boulevard, or in Block E and G facing Fairmont or Clermont Drive or Gentilly Boulevard, within fifteen feet of the property line of the face of the porch, with the exception of lot 3 to 24 inclusive in Block F, facing Clermont Drive, where property must be fifteen feet from front property line to face of the porch. Nor shall there be erected in any of these blocks any structure in which persons of African Race reside or congregate, and no building erected in Block A, B & C, D, and E to cost less than $5000.00 or in Block F and G to cost less than $4000.00. There shall be no business establishments except on lot 1, 2, 41 and 42 in Block G and lots 43, 44, 83 and 84 in Block F, these being reserved for business purposes for the convenience of lot owners.
 

 “There shall be no front fences permitted and no sheds or garage to be constructed within twenty-five feet of the property line.
 

 “All sites in block A, B, C, D & E facing Fairmont & Clermont Drives shall be restricted to single dwellings and block F and G to single or double dwellings with the exception of those sites for business aforementioned.
 

 “The above conditions and restrictions shall be binding upon the said purchaser, his or her heirs and assigns forever.”
 

 In August of 1944 De Lucca acquired Lots 1 and 2 in-Square A of this subdivision and subsequently endeavored to construct thereon a building to be used partly as a post office and partly as a restaurant. The respondents thereupon instituted proceedings against him and secured a judgment therein on May 8, 1945, forever enjoining him from “erecting a commercial building on the lots owned by him” and forever, enjoining him “from conducting, operating or permitting the operation of a post office, restaurant or any other kind of business establishment on the said lots.” More than a year later, on October 17, 1946, the respondents began the proceedings here under consideration by filing a rule against De Lucca ordering him to show cause why he should not be held in contempt of court for violating the injunction by his maintenance of a sign or billboard oh Lots 1 and 2 of Square A, and, in the alternative, to have him enjoined from erecting or permitting the maintenance on his property of any sign or billboard for advertising purposes, it being in violation of the title restrictions in his deed to the property. They prayed that he be ordered to remove the sign or billboard presently located on this property. In response to this rule De Lucca filed exceptions of vagueness and of no cause and no right of action and he then answered generally denying that he had violated either the title restriction in his deed to this property or the judgment of the court. He coupled with his answer a plea of prescription of two years, based on Act 326 of 1938. The
 
 *666
 
 exceptions and plea were overruled and, on the merits, the court rendered the judgment complained of.
 

 The relator concedes that if the restrictions in his title provide that Lots 1 and 2 are not to be used for commercial or business purposes, then he would not have the right to maintain the sign or billboard on these lots. But he insists that the restrictions refer to business establishments, which he was enjoined from conducting by the judgment of May 8, 1945, and since signs or billboards are not such an establishment, the judgment “did not have the effect of prohibiting the erection or continuance of a sign on said premises,” Finally, he urges that if he is in error in the contentions, the right of the respondents to the relief here sought is prescribed by two years under the provisions of Act 326 of 1938.
 

 It is the well established jurisprudence of this state that where restrictions have been inserted in deeds in pursuance of a general plan devised by the ancestor in title to maintain certain building standards and uniform improvements, such as those here under consideration, they are valid and enforceable. Queensborough Land Co. v. Cazeaux, 136 La. 724, 67 So. 641, L.R.A. 1916B, 1201, Ann.Cas.1916D, 1248; Hill v. Wm. P. Ross, Inc., 166 La. 581, 177 So. 725; Rabouin v. Dutrey, 181 La. 725, 160 So. 393; and Ouachita Home Site & Realty Co. v. Collie, 189 La. 521, 179 So. 841. These are real rights or covenants that run with the land for the benefit of land owners within the area and to prevent the violation of these restrictions injunction proceedings may be resorted to. See Collie and Queensboro cases, supra, and also Edwards v. Wiseman, 198 La. 382, 3 So.2d 661.
 

 Although these stipulations are stricti juris and every doubt should be resolved in favor of the unencumbered use of the property, whenever differences arise as to the extent or limitation of these restrictions, we must look to the intention of the party encumbering the property from the words used in the stipulations in the deed, consideration being given to the entire context of the instrument rather than to a single phrase or clause, for obviously those acquiring the property in the restricted area were motivated and influenced to purchase the same because of these limitations and they are entitled to the presumption that they will be fairly and faithfully complied with.
 

 The relator’s contention that sign or billboards do not come within the restriction in the deed that “there shall be no business establishments” except on certain designated lots (not those in controversy here) since these structures are more in the nature of business or commercial ventures, is untenable, for this clause in the deed that is relied on by the relator continues with the further explanation that the lots reserved for business establishments are
 
 "for business purposes for the
 
 con
 
 *668
 

 venience of lot owners”•
 
 and it is obvious from a mere reading of the entire context of the restrictions to these titles that such lots as are not so reserved-for business purposes are to be used exclusively for residential purposes, i. e., for the construction, of dwellings to be used as homes.
 

 This brings up for consideration the question of whether or not the relator can be held in contempt of court for his maintenance of the signboard in controversy, which sign was admittedly erected and maintained on this property prior to the institution of the injunction proceedings that culminated in the judgment of May 8, 1945.
 

 An examination of the injunction proceedings shows that its express purpose was to halt the relator’s construction of a commercial building on these two lots, a part of it being' intended for use as a restaurant, the other part as a post office, and although this signboard was and had been on the premises since some time in 1941, long prior to the time the injunction proceedings were begun, no mention was made of it in the proceedings. Consequently, there was no adjudication with respect to the same and the relator cannot be said to have violated the authority of the court by his continuance of this sign on the premises.
 

 We now pass to the final question presented for our determination, that is, whether or not the respondents are, by permitting the relator and his 'predecessor in title to erect and maintain this billboard fora period of more than 2 years, now barred from questioning his right to continue its maintenance under the provisions of Act 326 of 1938.
 

 ' Under the express provisions of that act “all actions to enjoin, or to obtain damages for the Commission, or continuance, of a violation of restrictions contained in the title to land, where otherwise such action presently exists under the laws of this State, must be brought within two years from the commission of said violation” (Section 1), and “in all cases where the prescription provided * * * shall have accrued, the particular parcel of land on which the restriction has been violated shall be forever free from the restriction
 
 which has been
 
 violated.” Section 2.
 

 (Italics ours.)
 

 It is our opinion, therefore, that the respondents, having permitted the relator and his author in title to erect this signboard on Lots 1 and 2 of Square A in the Fairmont Park Subdivision of Gentilly and to maintain it uninterruptedly for a period of more than two years, these lots are freed of this particular restriction. See, Edwards v. Wiseman, supra.
 

 For the reasons assigned the judgment of the lower court is annulled and set aside and the rule filed against the relator, Joseph De Lucca, to show cause why he should not be held in contempt of court, or, in the alternative, to compel him to re
 
 *670
 
 move the sign or billboard maintained by him on Lots 1 and 2 of Square A of the Fairmont Park Subdivision in the Gentilly section of New Orleans, is dismissed, at the cost of the respondents, Dr. Emmanuel F. Salerno, D. Thomas Salsiccia, Gustave J. Cucullu, Philip A. Gaudet, and Herman Frank.