459 So.2d 1242 (1984)
CONCORD ESTATES HOMEOWNERS ASSOCIATION, INC., et al.
v.
SPECIAL CHILDREN'S FOUNDATION, INC., et al.
No. 83 CA 1186.
Court of Appeal of Louisiana, First Circuit.
November 20, 1984.
*1243 Luke Lavergne, Baton Rouge, for plaintiffs-appellees.
Walter L. Comeaux, Baton Rouge, for defendants-appellants.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON[*], JJ.
JOHN S. COVINGTON, Judge Pro Tem.
Defendants Special Children's Foundation, Inc. (SCF) and Special Children's Village, Inc. (SCV) appeal from a judgment granting a preliminary injunction which prohibits them from continuing to operate a home for six or fewer mentally retarded individuals at a residence in Concord Estates Subdivision, Baton Rouge. Defendants contend that the trial judge erred in holding that they are using the property for commercial purposes, in violation of subdivision restrictions. Also at issue is whether the home is used as a "single-family dwelling" in accordance with subdivision restrictions.
We reverse.
Defendants SCF and SCV are separate, non-profit corporations, united in their guiding purpose, to promote the de-institutionalization of retarded individuals. To that end, SCF purchased the subdivision home in question and leased it to SCV for use as a home for a maximum of six retarded individuals, supervised by two live-in staff employees. At the time of trial, only four retarded persons, with staff, resided in the home.
Plaintiffs, Concord Estates Homeowners Association and various individual subdivision homeowners, subsequently filed suit against SCF, SCV and Loyd Rockhold, president of both corporations, seeking to enjoin continued operation of the home. The trial judge granted the preliminary injunction against SCF and SCV, but dismissed Loyd Rockhold from the suit.
The particular building restrictions relied upon by the plaintiffs are as follows:
"1.1 All of the lots contained in this subdivision are hereby designated as residential lots, and no building shall be erected, altered, placed or permitted to remain *1244 on any residential lot other than (1) one detached single-family dwelling not to exceed 2½ stories in height and a private garage for not more than four automobiles.
1.2 No lot shall be used for duplex housing or apartment houses or home occupations such as beauty shops, doctor's offices, dress shops and related activities.
1.3 No school, church, assembly hall or fraternal group home shall be built or permitted on any lot in this subdivision."
When he issued his ruling, the trial judge explained that he interpreted the designation, in Section 1.1 of the restrictions, of all subdivision lots as residential to constitute a prohibition of all commercial use of subdivision property, and he concluded that SCF and SCV were using the property for commercial purposes in violation of the restrictions.
It is well recognized that restrictions affecting immovable property are to be strictly construed, with any doubt resolved in favor of unencumbered property use. However, when differences arise as to the extent or limitation of restrictions, courts must look to the expressed intention of the party encumbering the property as set forth in the instrument embodying the restrictions, giving due consideration to the entire context of the document. Salerno v. DeLucca, 211 La. 659, 30 So.2d 678 (La. 1978).
Defendants contend that the trial judge erred in his interpretation of the restrictions, arguing that they do not expressly prohibit commercial activity, other than those activities specifically listed in section 1.2. Alternatively, defendants contend that the trial judge erred in concluding that their use of the property is commercial, and not residential, in nature.
Plaintiffs argue that the use is commercial, because the operation of the home is a "business enterprise". They argue that because SCF and SCV receive financial remuneration from the state and federal governments (which covers only part of operation costs), hire employees to live on the premises and supervise the residents, and pay worker's compensation and social security for these employees, the use of the home is necessarily commercial in nature.
Although the restrictions do not specifically bar commercial activity in general, the designation of all lots as `residential' clearly bars the use of subdivision property for any purpose other than as a residence. It is not necessary that we resort to a dictionary or law book to ascertain the meaning of "residential". Giving the word its plain and ordinary meaning, we may confidently say that a building used for residential purposes is one in which people reside or dwell, or in which they make their homes, as distinguished from buildings in which people conduct business or commerce.
Plaintiffs produced no evidence that could support a finding that the use of the home in question involved on-the-premises operation, of a commercial or business enterprise, as those terms are commonly understood. That the defendants are partially compensated for their costs of operation and provide paid employees to supervise the residents of the home does not change the character of the actual use of the home from that of a residence or dwelling. Tucker v. Special Children's Foundation, Inc. and Special Children's Village, Inc., 449 So.2d 45 (La.App. 1st Cir.1984) writ denied 450 So.2d 959 (1984); see also Knudtson v. Trainor, 216 Neb. 653, 345 N.W.2d 4 (1984); Beres v. Hope Homes, Inc., 6 Ohio App.3d 71, 453 N.E.2d 1119 (1982); Hobby & Son v. Family Homes, 302 N.C. 64, 274 S.E.2d 174 (1981); Linn County v. City of Hiawatha, 311 N.W.2d 95 (Iowa 1981); Costley v. Caromin House, Inc., 313 N.W.2d 21 (Minn.1981); Crowley v. Knapp, 94 Wis.2d 421, 288 N.W.2d 815 (1980); Berger v. State, 71 N.J. 206, 364 A.2d 993 (1976).
Plaintiffs contend that defendants violated the restrictions in that they were not using the residence as a "single-family dwelling", but as a "fraternal group home". The restrictions do not themselves define either term, nor do plaintiffs attempt to explicitly do so. Instead, they argue that *1245 the term "single-family" should be understood in its "ordinary" or "traditional" sense, "as commonly understood by all". Although we would prefer not having to speculate as to plaintiffs' meaning, we assume they are referring to a nuclear family, related by blood or marriage.
Acts 1982, No. 538 and Acts 1983, No. 659, amended and reenacted what is now our Mental Retardation and Development Disability Law. As amended, LSA-R.S. 28:381(8) provides, in pertinent part: "Community homes that provide for six or fewer mentally retarded individuals, with no more than two live-in staff, shall be considered single-family units having common interests, goals, and problems."
Plaintiffs argue that the legislative characterization of these group homes as "single-family units" should not be applied in this instance, as the intent of the original drafter of the restrictions must control their interpretation. Alternatively, they argue that the definition was made solely for administrative purposes irrelevant to this context. Finally, assuming that we do apply the statute, plaintiffs argue that: (1) such would constitute an unconstitutional impairment of contracts and (2) the cited Acts are unconstitutional in that they are not confirmed to one object and their titles are not indicative of their multiple purposes.
Defendants contend that the residents of the group home are functionally a single family, despite the fact they are unrelated by blood or marriage. Additionally, they argue that the cited legislation, as a valid exercise of the state's police power, supercedes the subdivision restriction.
Assuming arguendo that the group of individuals in question would not otherwise constitute a single family within the context of these restrictions (which the court by no means concedes), LSA-R.S. 28:381(8) is applicable and supercedes the subdivision restrictions, for the reasons fully articulated by this court in Tucker v. Special Children's Foundation, Inc., supra. The group home was accordingly being used as a "single-family dwelling", in compliance with subdivision restrictions. Plaintiffs' arguments of unconstitutionality were not raised in the court below and will not be considered for the first time on appeal.[1] Rule 1-3, Uniform Rules, Courts of Appeal.
For the foregoing reasons, the judgment of the trial court enjoining defendants from operating the community home at 3071 Yorktown Drive, Baton Rouge, Louisiana, is reversed. Plaintiffs are to bear all costs of this appeal.
REVERSED.
NOTES
[*] Judge John S. Covington of the 19th Judicial District Court has been duly elected to this court; that term begins on January 1, 1985. In the interim, the Supreme Court has appointed him to this court pro tempore.
[1] However, we note that this court in Tucker rejected a similar claim of unconstitutional impairment of contracts respecting this statutory provision.